No. 12,826.

THE CINCINNATI, HAMILTON AND INDIANAPOLIS RAILROAD COMPANY *v.* CARPER.

NEGLIGENCE.—*Railroad.*—*Carrier.*—*Passenger Taking Wrong Train by Mistake.*—Where a person has bought a ticket over a railroad, and by mistake takes passage on the wrong train, he is a passenger so far as to entitle him to protection against the negligence of the company.
SAME.—*Directions of Conductor to Passenger.*—*Contributory Negligence.*—Where

The Cincinnati, Hamilton and Indianapolis Railroad Co. *v.* Carper.

the directions of the conductor of a passenger train are within the scope of his authority, and obedience to them will not expose a passenger to known or apparent danger which a prudent man would not incur, obedience by the passenger is not contributory negligence, although it may result in bringing injury upon him.

SAME.—*Principal and Agent.—Authority of Conductor.— When Terminated.— Responsibility of Carrier for Act of Agent.*—Where a passenger enters a wrong train through a mistake of his own, the authority of the conductor as the representative of the carrier terminates when a safe. alighting place is provided, and the passenger has voluntarily left the train in safety. In such case the carrier is not responsible for any advice or directions given by a conductor to the passenger after he has left the train, and is not liable for any injury received by him while acting upon such directions or advice, however erroneous, negligent or misleading the same may have been.

From the Fayette Circuit Court.

*R. D. Marshall* and *W. C. Forrey,* for appellant.

*B. F. Claypool, J. H. Claypool, J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellee.

ELLIOTT, J.—The complaint of the appellee alleges that his intestate bought a ticket at Connersville entitling him to a passage on the defendant's trains to Cincinnati, Ohio; that his intestate was a stranger in Connersville, unacquainted with the points of the compass at that city; that on the day he purchased his ticket he went to the appellant's depot, intending to take passage on its east-bound train, which, according to schedule time, passed Connersville at eight o'clock and forty-seven minutes P. M.; that the east and west-bound trains usually passed at that hour at Connersville; that the night on which the appellee's intestate intended to take passage was dark; that, at a short distance to the west of appellant's station, the track passed over a highway and a canal, upon an elevated trestle-work several hundred feet in length; that at a short distance west of the trestle-work there was a switch known as Salter's switch; that on the night on which the intestate intended to take passage for the east, the train from the west was behind time, and was ordered to wait at Salter's switch for the train from the east; that the latter

train was ordered to move forward and pass at that point; that the conductor of that train had notice of these orders; that on the arrival of the train from the east, the intestate, supposing it to be the east-bound train, entered it and immediately thereafter it departed; that shortly after the departure of the train the conductor informed him that he was on the wrong train, and stopped the train a short distance west of the trestle-work which spanned the canal and highway; that "he carelessly and negligently directed the deceased to get off, and at once to walk back over the railroad track to Connersville, informing him that if he, the deceased, did so" he would reach the station in time to take passage on the east-bound train; that at the time the conductor gave these directions he knew of the existence of the trestle-work, and that the east-bound train would in a very few minutes pass over that part of the track lying between the place where the deceased was directed to leave the train and the station at Connersville; that there was no highway or foot-passage between those points by which the deceased could return to the station except by passing along the railroad track; that the deceased was ignorant of the existence of the trestle-work, and of the fact that the east-bound train would soon pass over the trestle-work; that the deceased undertook to obey the directions of the conductor, and, without fault or negligence on his part, was struck and killed while walking along the track built upon the trestle-work, on his way to the station at Connersville.

Where a person has bought a ticket over a railroad, and, by mistake, takes passage on the wrong train, he is a passenger so far as to entitle him to protection against the negligence of the company. *Columbus, etc., R. W. Co.* v. *Powell,* 40 Ind. 37; Railway Accident Law, 215; *International, etc., R. R.* v. *Gilbert,* 22 A. & E. R. R. Cases, 405; 2 Wood Railway Law, 1047.

The deceased was, therefore, entitled to be treated as a passenger while on the train, and a high degree of practicable

care to protect him from injury was due to him from the carrier.

Where the directions of the conductor are within the scope of his authority, and obedience to them will not expose a passenger to known or to apparent danger which a prudent man would not incur, obedience by the passenger is not contributory negligence, although it may result in bringing injury upon him.

In *Pool* v. *Chicago, etc., R. W. Co.*, 53 Wis. 657, and 56 *Id.* 227, the doctrine was stated somewhat more broadly, and it was said, in speaking of the passenger: "He relied—and we think he had the right to rely—on the judgment of the person in charge of the car, presuming that by following his directions in the matter he would not expose himself to any unnecessary or unusual peril."

It was held in *Hanson* v. *Mansfield, etc., R. W. & Trans. Co.*, 38 La. Ann. 111 (58 Am. R. 162), that one who rides on the locomotive, under the direction of the "engineer or conductor," is not guilty of contributory negligence, and the court said: "It has also been frequently held, that taking an unusual place on a train, which ordinarily might be considered contributory negligence, can not be so regarded where the place is occupied by the direction or permission of the conductor."

We can not concur in this extreme view of the law. Our conclusion is, that a passenger may safely rely on the judgment of those placed in charge of the train, where it is not plainly open to his observation that reliance will expose him to danger that a prudent man would not incur, but that he can not rely on their judgment where it would expose him to a risk that a reasonably prudent man would not assume. An American author says: "If the danger is obvious, and such as a reasonable man would not have incurred, the passenger must not assume the risk." 2 Wood R. W. Law, 1121. It was said by this court in *Louisville, etc., R. R. Co.* v. *Kelly*, 92 Ind. 371 (47 Am. Rep. 149), that "Our own cases hold that passengers are warranted in obeying the

directions of the agents and servants of the carrier, unless such obedience leads to known danger which a prudent man would not encounter." This doctrine is supported by our own cases and by the great weight of authority. *Jeffersonville R. R. Co.* v. *Swift*, 26 Ind. 459; *Pennsylvania Co.* v. *Hoagland*, 78 Ind. 203; *Lake Erie, etc., R. W. Co.* v. *Fix*, 88 Ind. 381 (45 Am. Rep. 464); *Terre Haute, etc., R. R. Co.* v. *Buck*, 96 Ind. 346 (49 Am. R. 168); *Filer* v. *New York, etc., R. R. Co.*, 49 N. Y. 47; *Filer* v. *New York, etc., R. R. Co.*, 59 N. Y. 351; *St. Louis, etc., R. R. Co.* v. *Cantrell*, 37 Ark. 519 (40 Am. Rep. 105); *Fowler* v. *Baltimore, etc., R. R. Co.*, 18 West Va. 579; *Hickey* v. *Boston, etc., R. R. Co.*, 14 Allen, 429; *Railroad Co.* v. *Aspell*, 23 Pa. St. 147 (62 Am. Dec. 323); *Philadelphia, etc., R. R. Co.* v. *Boyer*, 97 Pa. St. 91; *Indianapolis, etc., R. R. Co.* v. *Horst*, 93 U. S. 291; *St. Louis, etc., R. W. Co.* v. *Person*, 4 S. W. Rep. 755; Beach Cont. Neg. 72; 2 Wood R. W. Law, 1121; Hutchinson Carriers, section 535.

Under the rule we have stated, the deceased can not be considered guilty of contributory negligence upon the case made by the complaint, for it is averred that he was ignorant of the danger to which the directions of the conductor exposed him, and was free from fault and negligence. As he was free from fault and ignorant of danger, and as the danger was not open to his observation, he can not be regarded as having done what a reasonably prudent man would not have done in relying upon the directions of the appellant's conductor, if the directions were given by the conductor while acting within the line of his duty.

We come now to a question of much more difficulty, and that is, were the directions of the conductor given while acting within the scope of his authority? It is an elementary rule that a principal is not bound by the acts of his agent, unless they are performed within the scope of the authority actually or ostensibly conferred upon him. This rule ap-

plies, of course, to railroad corporations as well as to natural persons. Railway Accident Law, 99.

The conductor of a passenger train is undoubtedly clothed with extensive authority. In discussing the subject Chief Justice RYAN said: "Indeed, as that fictitious entity, the corporation, can act only through natural persons, its officers and servants, and as it of necessity commits its trains absolutely to the charge of officers of its own appointment, and passengers of necessity commit to them their safety and comfort *in transitu,* under conditions of such peril and subordination, we are disposed to hold that the whole power and authority of the corporation, *pro hac vice,* is vested in these officers; and that, as to passengers on board, they are to be considered as the corporation itself." *Bass* v. *Chicago, etc., R. W. Co.,* 20 Wis. 450. Speaking for the court, CAMPBELL, J., said of the conductor and the company: "He represents them in the whole management of his train." It was also said: "He occupies the same position as the master of a ship." *Great Western R. W. Co.* v. *Miller,* 19 Mich. 305.

In *Chicago, etc., R. W. Co.* v. *Ross,* 112 U. S. 377, the court declared that the conductor represents the corporation, and said: "If such a conductor does not represent the company, then the train is operated without any representative of its owner."

Discussing the general subject, the Supreme Court of Pennsylvania said: "And where there are no prescript rules, the usage or common law of railroads makes the conductor the responsible agent in the conduct of the train. It is of the last importance to all interests, both public and private, that the law should define, with precision, to whom the custody and responsibility of a train of cars attaches. We hold that, from the beginning to the end of the trip, whatever the motive power employed, the conductor, and nobody else, is the responsible party in possession of the train." *Rauch* v. *Lloyd,* 31 Pa. St. 358.

There are many authorities which assert doctrines sub-

stantially the same as those declared in the cases from which we have quoted. *Columbus, etc., R. W. Co.* v. *Powell, supra;* *Terre Haute, etc., R. R. Co.* v. *McMurray,* 98 Ind. 358 (49 Am. R. 752); 1 Wood Railway Law, 449, and cases cited; Thompson Carriers, 369.

But, broad as the authority of the conductor is, it is by no means unlimited; on the contrary, it is limited to the management and control of the train committed to his care. He has authority to control the train in its movements, and it is his duty to take measures to preserve passengers from injury while getting on the train, while they are on it, and while they are alighting. In the discharge of this duty he must, as the representative of the company, exercise a high degree of care and diligence; but when the relation of carrier and passenger terminates, the authority of the conductor, as the representative of the carrier, is at end. His authority ceases when the passenger has safely alighted from the train.

The company does not vest him with either apparent or actual authority beyond such as is necessary for the proper care of the persons and property placed in his charge and control. When the person who enters as a passenger has finally left the train, the conductor no longer stands to him as the representative of the carrier. His representative character does not extend to acts done after the relation of passenger and carrier has been severed. It is his duty to afford the passenger whom he directs to leave his train a safe alighting place, but he is not bound, as the representative of the company, to look after the passenger after he has left the train. It may be that where a passenger leaves a train, and in making his way from the station is injured by the negligence of other servants, the company is liable. *Imhoff* v. *Chicago, etc., R. R. Co.*, 22 Wis. 681; *Gaynor* v. *Old Colony, etc., R. W. Co.*, 100 Mass. 208; *Indiana Central R. W. Co.* v. *Hudelson,* 13 Ind. 325. But, even in such a case, it is doubtful whether the liability is that of a carrier to a passenger; if, however, it were conceded that the liability is

The Cincinnati, Hamilton and Indianapolis Railroad Co. *v.* Carper.

of that character, still the concession would not avail the appellee, for the question here is not what other agents of the company did; the question is, what was done by the conductor, and was it within the scope of his authority? If the conductor had authority to give the deceased directions as to the course he should pursue after he left the train, then, upon the facts alleged in the complaint, the appellant may, perhaps, be liable; but if the conductor had no authority to give such directions, then there can be no liability on the part of the appellant. It is not for the negligence of any other of the appellant's servants that a recovery is sought; for the negligence of the conductor is stated as the sole cause of action, and for that negligence the appellant is not liable unless he was, at the time, acting as its agent and within the line of his duty.

Our judgment upon this point is, that where a passenger enters a wrong train, through a mistake of his own, the authority of the conductor as the representative of the carrier terminates when a safe alighting place is provided, and the passenger has left the train in safety, and that it does not extend so far as to authorize the conductor to direct the passenger what course he shall pursue after leaving the train. If the conductor had directed the deceased to walk ten or twenty miles it would hardly be contended that the corporation was responsible for such a direction, and we can not perceive that the principle is different whether the distance be long or short. A passenger has no right to assume that the carrier has invested the conductor with authority to direct him to travel back to a station where he entered a train by mistake, for the conductor is neither actually nor ostensibly clothed with any such authority. If the conductor had directed the deceased to go to a hotel, or had directed him to walk back upon a wagon road, he certainly would not have been acting in the line of his duty, and we can not discern any difference between such cases and the one under exami-

nation, for the direction to go back upon the track can not change the legal features of the case. If the conductor had refused to carry the deceased to a regular station, or had compelled him to leave the train, an essentially different question would have faced us; but here the passenger left the train without compulsion and undertook to rectify his mistake by making his way back to the station, so that the case turns upon the question whether the instructions given by the conductor as to the course the deceased should pursue after leaving the train were within the line of his duty. It is not the theory of the complaint that the conductor put the deceased off the train at an improper place; the case is not, therefore, controlled by the authorities upon that general subject. Nor is it the theory of the complaint that the conductor was guilty of negligence in directing the deceased to alight at an unsafe place, so that the case is entirely unlike that of a conductor directing a passenger to step from one train to another, or to alight upon a defective or unsafe platform. The classes of cases mentioned, and their kindred, are therefore excluded from our consideration and decision.

Counsel for the appellee dispose of the question whether the direction to the intestate to walk back to the station was within the line of the conductor's duty, by asserting that it is not an open question in Indiana, and refer us to the cases of *Carter* v. *Louisville, etc., R. W. Co.*, 98 Ind. 552 (49 Am. R. 780); *Evansville, etc., R. R. Co.* v. *McKee*, 99 Ind. 519 (50 Am. R. 102); *Terre Haute, etc., R. R. Co.* v. *Graham*, 46 Ind. 239; *Terre Haute, etc., R. R. Co.* v. *Fitzgerald*, 47 Ind. 79; *Indianapolis, etc., R. W. Co.* v. *Anthony*, 43 Ind. 183; *Jeffersonville R. R. Co.* v. *Rogers*, 38 Ind. 116 (10 Am. R. 103); *Pennsylvania Co.* v. *Hoagland*, 78 Ind. 203; *Columbus, etc., R. W. Co.* v. *Powell*, 40 Ind. 37; *Great Western R. W. Co.* v. *Miller*, 19 Mich. 305; *Bass* v. *Chicago, etc., R. W. Co.*, 36 Wis. 450 (17 Am. R. 495).

But these cases do not meet the question which controls here, for they do no more than assert that for a wrong of an

agent, whether wilful or negligent, committed within the line of his duty, the corporation is responsible, and that, in managing the train, the conductor is the agent of the railroad company. If it were granted that the act of directing a passenger what course to pursue after leaving a train is within the line of the conductor's duty, then the path of the appellee would be a smooth one, traversing solid ground; but the path is rugged and uncertain, because the assumption which is taken for granted—that is, that the act of the conductor was within the line of his employment—is the proposition which must be proved to make progress to a recovery possible. If it can be assumed that a railroad company actually or ostensibly invests its conductor with authority to direct passengers who by mistake enter the wrong train what route they shall take back to a station where they can rectify their mistake, then these authorities might justly be regarded as of controlling force; but, until the assumption which lies at the foundation of appellee's theory is established, these authorities are irrelevant and inapplicable.

One great reason why a passenger is justified in obeying the directions of a conductor is because the conductor is entitled to exact obedience. His directions are in the nature of commands or requirements; he may, indeed, put them in that form; it is, therefore, most reasonable that a passenger should have a right to rely on them when they are of that nature. The directions given by the conductor in this case are not of that nature, for it is perfectly obvious that he could not have required or commanded the deceased to take any particular route back to the station. It is not to be assumed that conductors have authority to bind the company by general directions, which are more in the nature of advice and information than of requirements or commands, as to what a passenger shall do after he leaves the train. There is an essential difference between a direction in the nature of a requirement and a direction in the nature of advice or information, as is strikingly illustrated by the cases of *Vi-*

*mont* v. *Chicago, etc., R. R. Co.*, 28 Am. & Eng. R. R. Cases, 210, and *Jeffersonville R. R. Co.* v. *Swift*, 26 Ind. 459. It is clear to our minds that, upon principle, a railroad company is not responsible for directions in the nature of information or advice, given to a passenger who, through his own mistake, has entered the wrong train, as to what course he shall pursue after leaving the train. This is so because the company does not, either actually or ostensibly, confer upon the conductor authority to give directions of that character to passengers who have entered its trains by mistake not caused by any negligence on its part.

Appellant's counsel dispose of the question by saying: "It was not an opinion given or an act done within the scope of his employment or authority, but a friendly act on the part of the conductor toward the person who had taken the wrong train without any fault or negligence on the part of the conductor." The only authorities cited are the cases of *Louisville, etc., R. W. Co.* v. *Boland*, 53 Ind. 398; *Cincinnati, etc., R. R. Co.* v. *Eaton*, 53 Ind. 307 ; and *Evansville, etc., R. R. Co.* v. *Dexter*, 24 Ind. 411. But, as counsel for the appellee justly say, "Not one of these cases bears even remotely upon the point to which it is cited."

Authorities upon the general question are very abundant, but upon the precise phase of the question here presented it is far otherwise. The case of *International, etc., R. R. Co.* v. *Gilbert*, 64 Texas, 536 (22 Am. & Eng. R. R. Cases, 405), in some of its features resembles the present case ; but in that case the direction given by the conductor was clearly within the line of his duty, because it was made to the passenger while on the train, and was a direction to her to remain on it. The difference between the two cases is obvious, for here the direction was as to what the passenger should do after he had left the train.

In *Chance* v. *St. Louis, etc., R. W. Co.*, 10 Mo. App. 351, it was held that a brakeman charged with the duty of directing passengers where to leave the cars had authority to bind

the company by directing the passenger to take a prescribed way from the train, and in support of this doctrine the cases of *McDonald* v. *Chicago, etc., R. R. Co.*, 26 Iowa, 124, 145, and *Allender* v. *Chicago, etc., R. R. Co.*, 43 Iowa, 276, were cited. That case, however, stands upon the rule that carriers are bound to provide safe alighting places and are bound by the directions of their employees respecting such places. That case is, therefore, far from holding that directions as to the course to be taken after the passenger has safely alighted are within the line of a conductor's duty. There is some resemblance between this case and that of *Hulbert* v. *New York Central R. R. Co.*, 40 N. Y. 145, but the court in its opinion attached no importance to the directions of the conductor, and held the company liable on the ground of a negligent breach of duty in failing to make safe the place where passengers entered and left its trains. We do not deem it necessary to comment upon the cases which hold the acts of an agent not to be within his duty, but content ourselves with referring to a few of them and to the text-books where others may be found: *Gilliam* v. *South and North Ala. R. R. Co.*, 70 Ala. 268 ; *Nunn* v. *Georgia Railroad*, 71 Ga. 710 (51 Am. Rep. 284) ; *Sevier* v. *Vicksburg, etc., R. R. Co.*, 61 Miss. 8 (48 Am. Rep. 74) ; 2 Wood R. W. Law, 1213.

The complaint can not be upheld unless it be adjudged that the conductor was not only in the service of the company, but that his instructions or directions were given while he was acting for the company within the line of his duty. If he was not acting for the company and within the line of his duty, the company would not be liable even though he was in its service and had committed a wilful tort ; but it is not the theory of the complaint that he committed such a tort, for there is no averment that the deceased was compelled or required to leave the train. We can not presume that a wrong was done by the conductor ; on the contrary, facts must be alleged which warrant the conclusion of tortious conduct, for the presumption is with the defendant, and

not the plaintiff. *Chicago, etc., R. R. Co.* v. *Bills,* 104 Ind. 13; *Beauchamp* v. *International, etc., R. R. Co.,* 56 Texas, 239 (9 Am. & Eng. R. R. Cases, 307).

We must conclude that the deceased willingly left the train, for it is not otherwise averred; and so, too, we must conclude that there was no fault on the part of the conductor except that of negligently instructing the deceased where and how to go in order to take the east-bound train. The utmost that can be claimed for the complaint, with trace or tinge of justice, is that it shows that the conductor negligently gave instructions to the deceased as to what he should do and where he should go after alighting from the train.

The deceased left the train, we must assume, of his own free will, influenced, it may be, by the instructions of the conductor, but not constrained by them. Thus he severed the relation of passenger and conductor, and thus he passed from the conductor's supervision and control. We can not think that the latter's authority went with the deceased from the train, controlling and protecting him on his way to the station. If the conductor had instructed the deceased to take a carriage and pass over a turnpike the company would not, it seems to us, have been liable, even though the conductor may have known that there was a broken bridge or a pitfall on the road which the deceased could not avoid. Neither would there have been liability if the conductor had assumed to direct the deceased to take a foot-path which he knew no man could traverse in safety. The principle which rules the real case against the appellee is the same as that which governs the supposed cases, and that principle is, that the conductor, as the representative of the company, had neither actual nor ostensible authority to instruct one who had voluntarily left his train, what path or road he should walk to reach a distant station.

Judgment reversed.

Filed Oct. 11, 1887.

ON PETITION FOR A REHEARING.

MITCHELL, C. J.—We have again examined this cause, and have also given attentive consideration to the able argument filed in support of the petition for a rehearing.

Recognizing the force of some of the points made in the argument, we nevertheless adhere confidently to the conclusions reached in the original opinion.

The case is, in some of its features, analogous in principle with *Lewis* v. *Flint, etc., R. W. Co.*, 54 Mich. 55, wherein, after full examination of the subject, it was held that the railway company incurred no liability.

The petition is overruled.