The Louisville, New Albany and Chicago Railway Company v. Lucas.

No. 13,906.

THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY
COMPANY v. LUCAS.

SPECIAL VERDICT.—*Formal Statements.*—*Omission of.*—Where the facts are properly stated, the omission of mere formal statements, or the usual formal conclusion, will not vitiate a special verdict.

RAILROAD.—*Duty to Passengers.*—*Must Provide Safe Alighting Places.*—It is the duty of a carrier of passengers to provide and maintain safe alighting places, and for a negligent breach of this duty it is liable to a passenger who sustains injury without his fault.

The Louisville, New Albany and Chicago Railway Company *v.* Lucas.

SAME.—*Platforms and Stations.—Lights.*—A railroad company is bound to keep the platforms at its stations in a safe condition, and if passengers are discharged after dark it must provide lights.

SAME.—*Defective Platform.—Injury to Passenger.—Concurring Negligence of Third Party.*—Where a railroad company discharges a passenger in the night-time at the crossing of another railroad, where the stations of the two companies are connected by an unlighted platform, so constructed as to lead the passenger to believe that it is designed for the use of travellers in passing from one station to the other, and the passenger, in going from the station where he alighted to the other station, and exercising care, falls through an unguarded hole in the platform and is injured, the carrier is liable, although the negligence of the other company concurred in causing the injury.

SAME.—*Proximate Cause.*—If an injury results from a negligent act of a defendant, such act will be deemed the proximate cause, unless the consequences are so unnatural and unusual that they could not have been foreseen and provided against by the highest practicable care.

EVIDENCE.—*Medical Witness.—Opinion as to Probable Results of Personal Injury.*—It is competent to ask a medical witness, either on direct or cross-examination, to give his opinion as to the probable results of an injury to the person.

From the Porter Circuit Court.

*G. W. Friedley, C. C. Matson* and *G. R. Eldridge,* for appellant.

*H. A. Gillett* and *E. D. Crumpacker,* for appellee.

ELLIOTT, C. J.—The appellee in her complaint charges the appellant and the Pennsylvania Company with negligence in suffering a platform adjoining their stations at Wanatah to become unsafe, and avers that, without fault on her part, she fell through a hole in the platform and was severely and permanently injured. The Pennsylvania Company was awarded judgment on the special verdict, and the appellant alone prosecutes this appeal. No objections have been urged to the complaint in argument, and we do not, therefore, give a synopsis of it.

The special verdict is not ill, although it does not contain the usual formal conclusion. Where the facts are properly stated, the omission of mere formal statements will not vitiate a special verdict.

The Louisville, New Albany and Chicago Railway Company v. Lucas.

The special verdict reads thus:

" We, the jury, having been required to find a special ver-
dict in this action, do find the facts in the case to be as fol-
lows : That said defendants are respectively railroad corpo-
rations of and in the State of Indiana, and were such at the
time of the injury hereinafter mentioned ; that at the time
of such injury, and for several years prior thereto, the
said defendants were respectively controlling and operating
railroads, the road of said Pennsylvania Company running
through the State of Indiana from east to west, and through
the counties of Laporte and Porter in said State, and the
one of said defendant Louisville, New Albany and Chicago
Railway Company running through said State from north
to south, and through said county of Laporte ; that said
railroads at the time of such injury, and for twenty-five
years prior thereto had, crossed each other at grade and
nearly at right angles, at the village of Wanatah, in said
county of Laporte ; that those in control of said respective
railroads had, during all said twenty-five years, solicited and
invited an interchange of freight and passenger traffic at
said point of crossing, and at the time of such injury said
defendants were doing, and for five years prior thereto had
been doing, a large business in the way of interchange of
freight and passengers at said point, each maintaining a reg-
ular station, with passenger, ticket and freight offices, at said
point, and transferring freight and the baggage of passengers
from one to the other ; that the said defendant Louisville,
New Albany and Chicago Railway Company, to the north of
said crossing had a main track and one side-track east of and
immediately adjoining the same; and about ten feet east of
said side-track had a building thirty-six feet long, the north
half of which was used and occupied by said company as a
passenger waiting-room, and ticket and telegraph office,
and the south half thereof as a freight-room ; and in front
of such building, and extending to the said side-track, a plat-
form at an elevation of about one foot from the grade of its

tracks, which building was forty-seven feet north of such crossing; that said defendant, the Pennsylvania Company, to the east of said crossing had one main track and a side-track north of and immediately adjoining the same, and about ten feet north of said side-track a freight-house forty-one feet long, and in front of such freight-house and extending to said side-track, a platform at an elevation of about three feet from the grade of its tracks, without any steps leading down therefrom to the ground, which freight-house was forty-one feet east. of said crossing; that said defendant Pennsylvania Company had a passenger ticket office on the south side of its main track, about one hundred and seventy-five feet east of such crossing, with a gravel walk on the grade of its track extending from a little east of said ticket office nearly to the crossing, along which walk it received and discharged its passengers; that there was a platform about twenty feet wide extending from the said Pennsylvania Company's freight-house, and connected with and joining on to the said platform in front thereof, and so extending thence westward along and abutting on said side-track to a, point where it joined and connected with a like platform,. about ten feet wide, extending southward from said platform in front of said passenger and freight-house of the defend-- ant Louisville, New Albany and Chicago Railway Company, and so joining and connecting at the angle formed by said crossing; that such platforms, and the respective extensions thereof aforesaid to such junctions thereof, were under the charge and control of the respective defendants on whose tracks they abutted as aforesaid, and were used by both said defendants for the entire length thereof for their joint use and convenience for the transfer of freight and baggage by one to the other respectively; that said platforms were so constructed and joined together as aforesaid as to form, and they did form, one continuous passage-way, without inter-ruption or any visible hindrance to the use thereof by pas-sengers, and were so constructed and joined together as to

The Louisville, New Albany and Chicago Railway Company v. Lucas.

lead one unfamiliar with the locality to suppose that they were intended for the use and convenience of passengers in going to and from the said station-house of the defendant Louisville, New Albany and Chicago Railway Company to that of the other defendant, and so as naturally to invite such use.

"There was, however, a way of going from said station of the Louisville, New Albany and Chicago Railway Company to the other, consisting of a plank walk about five feet wide, on a grade with their tracks, and leading from said elevated platform across said side-track and thence southward between the main and side-tracks to a point about 15 feet north of the main track of the Pennsylvania Company, and thence southeastwardly diagonally across such last mentioned track, to the south side thereof, and connecting there with the aforesaid gravel walk, which last mentioned route and way was the one ordinarily used by passengers. That the foregoing, so far as therein stated, represents the situation, condition, use and control of all the premises in question at the time of the injury hereinafter mentioned, and for five years prior thereto.

"At the time, however, of such injury, the said platform,. so extending from said Pennsylvania Company's freighthouse to such junction and connection, was old, decayed and greatly dilapidated and out of repair, and about 15 feet east of such junction there was a hole in said last mentioned platform, caused by the breakage of planks therein, of the size and for the space of three to five feet either way, which hole was then, and had been, and remained, open and wholly unguarded for the period of four months prior to such injury, and the existence thereof, as well as such general condition of such platform, was, during all said time, well known to both the defendants; that there was, during all said time,. a ditch running under said platform and immediately under said hole and open space, and the distance from the top of such platform to the bottom of such ditch was seven and

one-half feet; that, on the 12th day of November, 1885, the plaintiff in this cause was a passenger for hire, on one of the regular passenger trains of the defendant Louisville, New Albany and Chicago Railway Company, from the south, destined for Wanatah aforesaid, and intending there to take a train on said Pennsylvania Company's road; that such train on which plaintiff was so travelling arrived at and stopped in front of the said passenger-house of said Louisville, New Albany and Chicago Railway Company, at Wanatah aforesaid, at 6 : 30 P. M. of that day; that it was then after nightfall, dark and raining; that she alighted from said train, and the train immediately moved on and away; that said platform was wholly unlighted, and there was no light visible in or about said passenger-house or the platform, or the tracks in front thereof, nor any person in attendance thereon or present thereabouts; that plaintiff was wholly unfamiliar with said premises, only knowing the general direction from one station to the other; that she so alighted between said tracks, and discerning the outlines of said elevated platform in front of such passenger-house, she stepped at once to and upon the same, and from there looking around she did not, and by reason of the darkness could not, discover such walk between the tracks, nor any entrance to such station-building, but could and did discover the said elevated platform, extending southward in the direction of the other road; that she had no notice or knowledge of the existence of such walk between the tracks of the Louisville, New Albany and Chicago Railway Company; that she looked, and after looking about did not nor could she see or hear any person about the premises, and there were no lights visible, except in the distance and upon or beyond the said Pennsylvania Company's railroad; that there was barely sufficient light to enable a person to see the general outlines of said buildings and platforms; that said plaintiff knew of no other way, and supposing and believing that the said platform, so extending south, was the way, and the only way,

The Louisville, New Albany and Chicago Railway Company *v.* Lucas.

from said station at which she alighted to the other, she carefully walked along the same southwardly to such junction, and turned thence eastward on said Pennsylvania Company's platform, still supposing and believing as aforesaid, and without any notice or knowledge of any defect or imperfection in said platform, and unable, on account of the darkness, to discern any defect or imperfection therein, and so walking on carefully and at a moderate gait, she, suddenly and without notice or warning, stepped into and fell through the hole aforesaid, to the bottom of said ditch, and by reason of such fall she suffered severe and permanent physical injuries, whereby she was and is damaged in the sum of $4,-500 ; that, during all the time from her alighting from such train to the occurrence of such fall and injury, the plaintiff was exercising such care, caution and prudence as persons of ordinary prudence would and do exercise under like circumstances. Now, if, upon the facts aforesaid, plaintiff is entitled to recover against the defendants, or either of them, then we find for the plaintiff, and assess her damages at $4,500."

The plaintiff, as a passenger of the appellant, was entitled to demand that the station's approaches and accessories used by it should be kept in a safe condition. A carrier of passengers is under a duty to provide and maintain safe alighting places, and for a breach of this duty must respond in damages to a passenger who, without contributory fault on his part, is injured by a negligent failure to perform this duty. *Terre Haute, etc., R. R. Co.* v. *Buck*, 96 Ind. 346 (49 Am. Rep. 168) ; *Cincinnati, etc., R. R. Co.* v. *Carper*, 112 Ind. 26 ; *Longmore* v. *Great Western R. W. Co.*, 19 C. B. N. S. 183 ; *Burgess* v. *Great Western R. W. Co.*, 6 C. B. N. S. 923 ; *Clussman* v. *Long Island R. W. Co.*, 73 N. Y. 606 ; *McDonald* v. *Chicago, etc., R. R. Co.*, 26 Iowa, 124 ; *McKone* v. *Michigan, etc., R. R. Co.*, 51 Mich. 601 (47 Am. Rep. 596). Where passengers are discharged after dark it is the duty of the railroad company to light its stations and platforms. *Moses* v. *Louisville, etc., R. R. Co.*, 39 La. Ann. 649 (4

Am. St. Rep. 231); *Stewart* v. *International, etc., R. R. Co.,* 53 Tex. 289 (2 Am. and Eng. R. R. Cases, 497); *Forsyth* v. *Boston, etc., R. R. Co.,* 103 Mass. 510; *Beard* v. *Connecticut, etc., R. R. Co.,* 48 Vt. 101; *Buenemann* v. *St. Paul, etc., R. W. Co.,* 32 Minn. 390 (18 Am. and Eng. R. R. Cases, 153); *Quaife* v. *Chicago, etc., R. W. Co.,* 48 Wis. 513; *Gaynor* v. *Old Colony, etc., R. W. Co.,* 100 Mass. 208.

The duty of a railway carrier does not end when it provides safe cars, engines and appliances, for its duty extends so far as to require it to provide means for passengers to safely enter its cars at its stations, and that duty also requires the carrier to make it safe for them to leave its cars and stations. After the passenger has left the cars and stations of a railway carrier its duty as a carrier ceases, but not until then. *Cincinnati, etc., R. R. Co.* v. *Carper, supra.*

It was the duty of the appellant to keep the platform which it used in conjunction with the Pennsylvania Company in a safe condition. The situation of the platform, and the manner of its construction, were such as to make it the duty of the appellant to see that it was safe, for it was bound to know that if it became unsafe the lives and limbs of its passengers were put in peril. A railroad company may not be bound to foresee and provide against accidents that no one could by the highest degree of practicable care anticipate, but it is bound to use the highest degree of practicable care to provide against accidents to passengers that may be foreseen and prevented. *Louisville, etc., R. R. Co.* v. *Wood,* 113 Ind. 544; *Wabash, etc., R. W. Co.* v. *Locke,* 112 Ind. 404; *Terre Haute, etc., R. R. Co.* v. *Buck, supra; Binford* v. *Johnston,* 82 Ind. 426; *Louisville, etc., R. R. Co.* v. *Schmidt,* 81 Ind. 264; *City of Crawfordsville* v. *Smith,* 79 Ind. 308; *Wagner* v. *Goldsmith,* 78 Ind. 517; *Billman* v. *Indianapolis, etc., R. R. Co.,* 76 Ind. 166. The negligence of the appellant in leaving a platform, constructed as was the one described in the verdict, in a dangerous condition, without lights or guards, might have been expected to bring upon a passenger just such

an injury as the plaintiff actually received, and the appellant was in fault for not foreseeing and guarding against what did occur.   The consequences which resulted were the natural consequences of the appellant's breach of duty, and it must answer to the injured person. *Blythe* v. *Birmingham Waterworks Co.,* 11 Exch. 781 ; *Hoag* v. *Lake Shore, etc., R. R. Co.,* 85 Pa. St. 293 ; *Smith* v. *London, etc., R. W. Co.,* L. R. 6 C. P. 14 ; *Indianapolis, etc., R. W. Co.* v. *Pitzer,* 109 Ind. 179. It is not necessary that precisely such an accident as actually occurred might be anticipated, for there is liability if it was probable that some injury might result from a negligent breach of duty.

We have disposed of the argument of the appellant which asserts that the negligence attributed to it was not the proximate cause of the appellee's injury in what we have said, for, as the authorities all declare, if the injury resulted from the negligent act of the defendant, that act will be deemed the proximate cause, unless the consequences were so unnatural and unusual that they could not have been foreseen and provided against by the highest practicable care.   The authorities we have cited declare the doctrine we have stated, as do those which follow, and many others.   Bishop Non-Contract Law, sections 46, 457 ;   Wharton Negligence (2d ed.), section 77.

If it were granted that the negligence of the Pennsylvania Company concurred with that of the appellant in causing the appellee's injury, it would not exculpate the latter. It is not legally possible that one negligent person may escape liability because the negligence of another concurred in producing the injury. *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186 ; *Slater* v. *Mersereau,* 64 N. Y. 138 ; *Barrett* v. *Third Avenue R. R. Co.,* 45 N.Y. 628; 2 Thompson Neg., 1088; Bish. Non-Contract Law, section 572.   The question here is not as to the rights of the appellant against the Pennsylvania Company, but the question is, what are the rights of a passenger whom the appellant had undertaken to carry safely?

The duty which rested upon the appellant we have already defined, and it only remains to add that there is a right of action although the Pennsylvania Company may also have been guilty of culpable negligence.

The special verdict very satisfactorily shows that the appellee was not guilty of contributory negligence. She had a right, within reasonable limits, to rely upon the presumption that the company had done its duty and that the platform was safe. *Nave* v. *Flack*, 90 Ind. 205, 208; Bishop Non-Contract Law, section 532. She did all that the most prudent person could well have done under the circumstances, and this was all that the law requires. She had a right, in the situation in which she was placed by the appellant, to proceed, using care and caution, as she did, and the injury which she received is attributable solely to the culpable fault of the railroad companies. *Terre Haute, etc., R. R. Co.* v. *Buck, supra.* "In considering whether or not passengers are in fault, it may be taken into account that they are justly entitled to presume that the duty" of making stations, approaches and surroundings safe has been performed. Bishop Non-Contract Law, section 1086.

On cross-examination one of the medical witnesses was asked: "Whether the present debilitated condition of the plaintiff might not be produced, either directly or indirectly, by the fall she received?" And another was asked: "What might be the result of a dislocation of the kidneys?" And the appellant's counsel assert that the trial court erred in permitting the questions to be asked. In our judgment counsel are clearly in error. It is competent to ask a medical witness his opinion as to the probable results of an injury to the person, on direct examination, and it is certainly competent to ask such a question on cross-examination, where one of the chief objects is to test the skill and professional knowledge of the witness. *Goodwin* v. *State*, 96 Ind. 550; *Wabash R. W. Co.* v. *Savage*, 110 Ind. 156; *Louisville*,

*etc., R. W. Co.* v. *Falvey,* 104 Ind. 409 ; *Louisville, etc., R. W. Co.* v. *Wood,* 113 Ind. 544, 558.

We can not hold that the damages assessed are excessive, for there is abundant evidence that the appellee was very severely injured and that her injuries are of a permanent nature.

Judgment affirmed.

Filed June 18, 1889; petition for a rehearing overruled Sept. 19, 1889.