NOTE.—The syllabus to the original opinion in this case was, by some inadvertence, omitted from the case as published in volume 142, p. 475, and hence its republication in this volume.

THE LOUISVILLE, NEW ALBANY AND CHICAGO R. W. CO. AND THE TOLEDO, ST. LOUIS AND KANSAS CITY R. W. CO. *v.* TREADWAY.

RAILROAD. — *Duty to Properly Light Platform and Waiting-rooms in Night Time.*—It is the duty of railroad companies, within a reasonable time before the arrival and departure of its passenger trains, in the night time, to properly light its waiting-rooms and the platform connected therewith, and approaches thereto, so as to make them comfortable and safe for the use of passengers wishing to take passage on its trains.

SAME.—*Same Platform and Depot Used by Two Companies.—Duty to Light.*—Where two railroad companies use the same depot and

platform, and a person enters upon the premises in the night time to take passage on a train of one of the companies, no duty to light is owing to such passenger from the other company.

SAME.—*When One Becomes a Passenger.*—*Depot Platform.*—*Failure to Light.*—*Injury.*—Such person, on her arrival at the station, became entitled to all the rights, privileges, and protection of a passenger from the company on whose train she was waiting to take passage; and she had the right to retire from the depot to answer a call of nature, no closets being provided in the depot for such purpose, and, while so doing and returning again, such person was entitled to all the protection of a passenger, and the company's duty to her as such continued; and the company is liable for damages sustained by her by unintentionally stepping off the platform and being precipitated to the ground below by reason of the darkness at such part of the platform.

SAME.—*Duty to Light Platform.*—It is not only the duty of the railroad company to light the platform between the depot and the track, but it is its duty to keep all parts of the platform lighted of which the passenger may reasonably make use in approaching or leaving the depot.

SPECIAL VERDICT. —*Erroneous Finding.*—*Harmless Error.*—If a special finding of a fact can be eliminated from a verdict, and the judgment necessarily be the same, such finding is harmless even if erroneous.

APPELLATE PROCEDURE.—*Judgment Reversed as to One Joint Defendant and Affirmed as to Another.*—*Special Verdict.*—A judgment rendered upon a special verdict may be reversed as to one joint defendant and affirmed as to the other, under the statute authorizing a judgment against one alone of several joint defendants, although there is no apportionment of the damages assessed between the defendants.

From the Putnam Circuit Court.

*C. Brown, S. O. Bayless, C. G. Guenther, G. W. Kretzinger* and *B. Clark,* for appellants.

*B. Crane* and *A. B. Anderson,* for appellee.

MONKS, J.—Appellee brought this action against appellants, the Louisville, New Albany and Chicago R. W. Co., commonly called the "Monon," and the Toledo, St. Louis and Kansas City R. R. Co., commonly called the "Clover Leaf," to recover damages for injuries

alleged to have been received by her at a depot used and maintained by appellants.

Appellants each filed separate demurrers to the complaint, for the reason that the same did not state facts sufficient to constitute a cause of action, which demurrers were overruled by the court, and exceptions were reserved.

The "Monon" filed an answer in two paragraphs, to the second of which appellee's demurrer was sustained, and exception taken. The "Clover Leaf" filed an answer in one paragraph. The cause was tried by a jury, and the special verdict returned; thereupon each appellant filed its separate motion for judgment in its favor on the special verdict, which motions were overruled; to which action of the court appellants each excepted. The court rendered judgment on the special verdict, in favor of appellee, against appellants, to which appellants severally excepted.

Appellants then filed their separate motions for a new trial, which were overruled and exceptions reserved.

Appellants separately assign errors in this court; the reasons urged for a reversal are :

First.—That the court erred in overruling the demurrer of each appellant to the complaint.

Second.—That the court erred in overruling the separate motion of each appellant for a new trial.

Third.—That the court erred in overruling the separate motion of each appellant for a judgment in its favor on the special verdict.

The complaint was sufficient to withstand the demurrers of appellants. The objections urged thereto, so far as it charges negligence, could be reached by a motion to make more specific, but not by demurrer. Neither were the specific statements as to the conduct of appellee sufficient to overthrow the general allegation that

appellee was injured without any fault or negligence on her part. *Pennsylvania Co.* v. *O'Shaughnessy, Admr.*, 122 Ind. 588, and cases cited; *City of Elkhart* v. *Witman*, 122 Ind. 538, and cases cited; *Town of Rushville* v. *Adams*, 107 Ind. 475.

It is unnecessary to set forth the complaint or the substance of the same, as substantially the same questions are presented upon the special verdict.

The special verdict, so far as necessary to determine the questions presented, is:

That the "Monon" railroad runs north and south through the town of Linden, and the "Clover Leaf" runs east and west through said town; that on the 19th day of January, 1891, and for five years prior thereto, there was located at the intersection of said railroads, and in the southeast angle thereof, a station, consisting of a depot building and adjacent platforms, which were on said day, and for five years prior thereto, used and maintained by appellants for the reception and discharge of passengers on appellants' trains respectively, and for the accommodation of persons taking passage on either of said railroads, and for the convenience of persons transacting, or intending to transact, business with either of said companies; that said depot was constructed and maintained about midway between the tracks of said railroads, and facing the intersection thereof, about thirty-five feet from said intersection, and consisting of a waiting room for passengers, a telegraph and ticket office and freight room, the waiting room being at the end nearest to the public highway, and the ticket and telegraph office being between said waiting room and said freight room; that the space between said depot building and said railroad track was covered by a plank platform, which extended around said building at the northeast end thereof to a line running north and south

through the east corner of said building; that said plat-form extended south from the south side of the track of the "Clover Leaf," along the east side of the track of the "Monon," about one hundred and thirty feet, and east from the east side of the track of the "Monon," along the south side of the track of the "Clover Leaf," about one hundred and forty feet, to a public highway running north and south, and crossing the last named railroad, which highway furnished the only public approach to said station, the part of said platform which extended east from the line running north and south through the east corner of said building to said highway being seven feet and four inches wide; that the surface of the ground descended from said highway to the depot building, so that the platform at the northeast end of said building was from three and one-half to four feet above the sur-face of the ground; that said platforms were used and maintained without guards, guard-rails, railing or bar-riers of any kind to prevent or protect passengers or other persons having business with said company or either of them, from falling or stepping off said platform at the northeast end of said building, and the erection and maintenance of guards, guard-rails, railings or bar-riers on the edge of the platform at the northeast end of said building would not have materially interfered with the business of said appellants in the handling of bag-gage and freight of said station; that said appellants used and maintained said station and platform in their business in the condition aforesaid, on said 19th day of January, 1891, and for several years prior thereto, and during all of said time knew of the dangerous condition thereof; that on said 19th day of January, at about one and a half o'clock, A. M., appellee went to said station for the purpose of taking, and intending to take, pass-

age on the passenger train of the "Monon," going north on said road at about two o'clock and nineteen minutes, A. M., from said station to the station of Hammond, Indiana, both of said stations being regular stopping places for said train, and appellee at the time holding a ticket entitling her to passage on said train from said station of Linden to the station of Hammond; that when appellee went to the station at Linden the depot and waiting room thereof were open for the reception and accommodation of passengers and persons intending to take passage on trains of the "Monon;" that the "Clover Leaf" ran no passenger trains at said time between the hours of six o'clock P. M. and six o'clock A. M., and appellee transacted no business with said last named company; that said appellee approached the station from the highway hereinbefore mentioned, and walked along said platform from the highway to the entrance of the waiting room, and entered the waiting room to await the arrival of the train; that there was no light or fire in the waiting room, and appellee was invited, by the agent of the said appellants, to enter the ticket and telegraph office, and she did enter said office to wait for said train; that appellee was ignorant of the condition of said platform and of the fact that it was unsafe and dangerous and not provided with guards, guard-rails, railings or barriers of any kind as aforesaid, and that said platform, extending to said highway, did not cover all the space between said depot building and the highway; that while appellee was waiting for said train, it became necessary for her to leave said depot and waiting room temporarily, to attend to a necessary and urgent call of nature; that there was no water-closet or privy in or near said depot grounds to which she could go for such purpose, and for the purpose of attending to said call of nature appellee, at about two o'clock A. M.,

temporarily left said depot building and went out upon
said platform and attempted to leave the same by the
same route by which she approached said waiting room
and depot, and started in that direction, intending to
return to said depot building as soon as she had attended
to said call; that it was dark and there were no lights
about said depot on said platform, nor any means to enable
plaintiff to see the edge or termination of said platform,
or the dangerous condition thereof; that in attempting
to leave said depot and platform, as aforesaid, appellee
walked along at a moderate gait, proceeding carefully
and cautiously, and on that part of said platform at the
northeast end of said building and at a point about sev-
enteen feet from the door of said waiting room, stepped
and fell off said platform, and was thrown violently
to the hard ground below, a distance of about four feet;
that appellee stepped and fell off said platform by
reason of the fact that there were no guards, guard-
rails, railings, or barriers or other protection on the edge
of said platform, at the northeast end of said depot
building, at the point where said appellee stepped and
fell off as aforesaid, and by reason of the fact that there
were no lights upon the platform or about said premises
to enable appellee to see the edge of said platform or to
ascertain the fact that said platform at the point
where she fell off was from three and one-half to four
feet above the surface of the ground; that when appel-
lee went to the station she approached the same from
the highway aforesaid and walked along said platform
along the south side of the "Clover Leaf" railroad from
said highway, in company with one George Wright,
who was familiar with said depot and platform and the
surroundings, up to and into said waiting room; that,
when appellee got up to leave said ticket and telegraph
office and said waiting room to answer said call of

nature, she saw no light except one lamp on the wall in the ticket and telegraph office, and saw no lantern whatever, although a lighted lantern was on the floor of the office at the time, and she did not ask the agent or Mr. Wright to show her out of the depot; that at said time appellants employed the same agent and telegraph operator, who sold tickets and transacted business for appellants at said station; that, in the year 1882, plaintiff's son was the day operator at said station, and appellee, in the spring of said year, visited her son at Linden and spent two or three hours on two or three different days visiting her son at the ticket and telegraph office in said station during the day time; that she approached said station from the boarding house of her son in Linden, by walking along the track of the "Monon" railroad, and did not on any occasion during said visit approach said station from the highway, and she did not visit or inspect that portion of said platform at the northeast end of said building, where she afterwards stepped and fell off, as aforesaid; that in November, 1890, appellee brought the dead body of her son from Hammond, Indiana, to Linden for burial, and she alighted from the cars on the "Monon" railroad at said station on the west side of said platform; that she was met at the station by friends who conducted her to a conveyance on said highway and a few days thereafter she returned to said station from said highway in company with friends; that at the time of her arrival and departure she was heavily veiled and had no occasion to, and did not, notice the condition of said platform; that these were the only times she was ever at said station prior to the time she received her said injuries; that the "Clover Leaf" railroad company maintained that part of the platform extending east along the line of its track, and the "Monon" company that part which extended south

along its track; that by reason of appellee's stepping
and falling off said platform as aforesaid and coming
violently in contact with the hard ground, she was
seriously hurt, etc.; that, during all the time from
her arrival at said station, on the 19th day of Jan-
uary, 1891, to the occurrence of such fall and injury,
the appellee was exercising such care, caution and pru-
dence as persons of ordinary prudence would, and do,
exercise under like circumstances.

It is settled law, in this State, that it is the duty of a
railroad company to keep in safe condition all parts of
its platforms, with the approaches thereto, to which the
public would naturally resort, so as to furnish safe
ingress and egress for, and to prevent injury to, its pas-
sengers who come upon them; and within a reasonable
length of time before the arrival and departure of trains,
in the night time, to properly light its waiting rooms,
and the platform connected therewith, and approaches
thereto, so as to make them comfortable and safe for the
use of the passengers wishing to take passage on its
trains.   For a breach of this duty, it is liable and must
respond in damages to a passenger who, without fault
on his part, is injured by the negligent failure to
perform such duty.   *Ohio, etc., R. W. Co.* v. *Stans-
berry*, 132 Ind. 533 (536), and cases cited; *Louisville,
etc., R. W. Co.* v. *Lucas*, 119 Ind. 583, and cases cited.
It is not, however, its duty to keep its waiting room
and platform lighted in the night time at unreasonable
hours, depending upon the size and importance of
the station.   *Louisville, etc., R. W. Co.* v. *Lucas,
supra*, and cases cited on pp. 589, 590; 2 Wood
Railroads (ed. of 1894), section 310, and cases cited;
*Heinlein* v. *Boston, etc., R. R. Co.*, 147 Mass. 136; 9
Am. St. Reports, 676.

Appellee, upon her arrival at the station, became

entitled to all the rights, privileges, and protection of a passenger from the "Monon" company.

It is urged by appellants that the court erred in rendering judgment in favor of appellee on the special verdict.

The special verdict states that the platform was not lighted, and it is clearly shown that the negligence of the "Monon" company, in leaving the platform described in the verdict without lights, was guilty of negligence, and that the same was the proximate cause of the injury. *Louisville, etc., R. W. Co.* v. *Lucas, supra.*

Appellee clearly had the right to retire from the depot for the purpose stated in the special verdict, and while so doing, and in returning again, she was entitled to the protection of a passenger, and the duty of the "Monon" to her as such continued. Appellee started to go from the station by the same way she approached. She did not intend to step off the platform when she did (as was the case in some of the authorities cited by appellants). Had she gone a few feet further north before turning east, she would have passed out in safety to the highway. If the platform had been lighted, she would have seen the platform leading to the highway, and passed out without being injured.

This is not a case where the injured party was attempting to step off the platform, not knowing the depth, as in *Forsyth* v. *Boston, etc., R. R. Co.*, 103 Mass. 510, cited by the appellants, but is a case where the injured party was seeking to go out by the way the "Monon" company was required to make safe to its passengers, at night, by lighting the same. This it negligently failed to do.

Counsel for appellants upon this point say : "But even though appellants were clearly negligent in not having the front part of the platform lighted ; that is, that part

of the platform which lies between the front of the depot or door of the depot, and the train or track upon which trains pass, such negligence could not have contributed to the accident, because, even if the platform had been so lighted, the light would not have extended to the point of the accident." Lighting the platforms between the depot and track alone would not have been sufficient under the law, the platform extending to the highway must also have been lighted to comply with the rule, and if it had been so lighted, no matter where the light was placed, appellee, as the jury find, would not have gone to the place of the accident, whether the light extended there or not, but would have walked out over the platform to the highway ; this is what she was endeavoring to do when she was injured.

It is earnestly insisted by appellants that there are no facts found from which the court can conclude that appellee was exercising due care ; that the finding on this subject consists wholly of conclusions of law. The statements in the special verdict concerning the care exercised by appellee are substantially the same as those in the special verdict in the case of *Louisville, etc., R. W. Co.* v. *Lucas, supra,* which was sustained by this court. *Terre Haute, etc., R. R. Co.* v. *Brunker,* 128 Ind. 542 (547–548).

Judgment on the special verdict was properly rendered against the "Monon" company.

It clearly appears from the evidence, that appellants used that part of the platform where appellee stepped off for loading and unloading vehicles, hauling baggage and freight to and from the depot. Appellants were not required to erect barriers of any kind at that point, and were not negligent for not so doing. The jury in the special verdict find otherwise ; and such finding is not supported by the evidence. If, however, the finding

of the jury concerning the necessity of barriers were eliminated from the verdict the judgment thereon would necessarily be the same against the "Monon" company; such finding therefore is harmless. The negligence consisted in not lighting the platform and approaches, and not in failing to erect barriers.

It was proper to state in the special verdict that there were no barriers, and also the elevation of the platform above the ground as showing the danger in the night time when not lighted and therefore the greater necessity for lighting the same.

In other respects the evidence supports the finding, and the "Monon" company's motion for a new trial was properly overruled.

A different question, however, is presented by the "Clover Leaf" company. The appellee did not go to the depot on any business with that company whatever; that company owed her no such duty as the law imposes upon a common carrier to its passengers. The "Clover Leaf" company, at that time, had no trains running at night carrying passengers over its road either to or from that station, and therefore was under no duty to light the platform or approaches thereto. Before this appellant can be held liable to appellee, it must be shown that, at the time and place mentioned, it was under some legal duty to appellee, which it failed to discharge. *Evansville and Terre Haute R. R. Co.* v. *Griffin*, 100 Ind. 221; *Pennsylvania Co.* v. *Shaughnessy, supra; Indiana, etc., R. R. Co.* v. *Barnhart*, 115 Ind. 399 (408); 2 Wood Railroads, sections 310 and 310a, *supra; Davis* v. *Central Cong. Society*, 129 Mass. 367; 16 Am. and Eng. Ency. of Law, pp. 414, 415.

The case of *Lucas* v. *Pennsylvania Co.*, 120 Ind. 205 (cited by the "Monon" company), is not an authority here; the injured party in that case had alighted from

the train of the "Monon," and was making her way over a platform to the proper place to take passage on the train of the Pennsylvania Co.; she was entitled to protection, as a passenger, from both companies. In that case the platform was old, decayed and greatly dilapidated and out of repair, and there was a hole in the same caused by the breakage of planks therein, of the size and space of three to five feet either way, which was open and "wholly unguarded;" such a place was a trap. In this case the platform was in good repair and was safe by day, and if properly lighted was safe in the night time. In that case both companies owed the injured party a duty because she bore the relation of passenger to each. In this case the "Clover Leaf" owed no duty to appellee more than it did to the general public, so far as lighting the platform was concerned. 2 Wood Railroads (2nd ed.), page 1345 ; *Montgomery R. R. Co.* v. *Thompson*, 77 Ala. 448 (54 Am. Rep. 72), and authorities cited, *supra*.

The court therefore erred in overruling the "Clover Leaf's" motion for a judgment in its favor on the special verdict.

Judgment affirmed as to the Louisville, New Albany and Chicago Railway Company, and reversed as to the Toledo, St. Louis and Kansas City Railroad Company, with instructions to sustain its motion for a judgment in its favor on the special verdict.

Filed May 28, 1895.

ON PETITION FOR REHEARING.

MONKS, J.—An earnest and able petition for rehearing has been filed by the "Monon" company.

It is claimed "that this court erred in reversing the judgment as to the 'Clover Leaf' company and affirming it as to the 'Monon' company because a judgment

at law cannot be reversed as to one joint defendant and affirmed as to the other."

The authorities cited by appellant in support of the rule asserted can have no force in this State, for the reason that the question is regulated by our code of civil procedure. Section 570, R. S. 1881; section 579, R. S. 1894, provides: "Though all the defendants have been summoned, the judgment may be rendered against any of them, severally, when the plaintiff would be entitled to judgment against such defendants if the action had been against them severally."

Section 568, R. S. 1881; section 577, R. S. 1894, provides: "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side as between themselves."

Section 569, R. S. 1881; section 578, R. S. 1894, provides that "In a suit against several defendants, the court may, in its decision, render judgment against one or more of them, leaving the action to proceed against the others whenever a several judgment is proper."

Under these sections it has been held by this court that the trial court possessed chancery powers in adapting its judgment to the rights of the parties. *Draper* v. *Vanhorn*, 12 Ind. 352; *Douglass* v. *Howland*, 11 Ind. 554; *Cutchen* v. *Coleman*, 13 Ind. 568; *Home Ins. Co.* v. *Gilman, Exr.*, 12 Ind. 7 (9).

That if a plaintiff sue two or more jointly and only prove a liability as to one, he is entitled to a judgment against that one. *Stafford* v. *Nutt*, 51 Ind. 535, and cases cited on page 538; *Louisville, etc., R. W. Co.* v. *Duvall*, 40 Ind. 246; *Moyer* v. *Brand*, 102 Ind. 301

(306); Thornton Ind. Prac. Code, annotated, sections 568, 569, 570, and notes.

In *Lower* v. *Franks*, 115 Ind. 334, on p. 337, this court, in speaking of the foregoing sections of the code of civil procedure, said : "In the case of *Hubble* v. *Wolf*, 15 Ind. 204, following the case of *Blodgett* v. *Morris*, 14 N. Y. 482, it was held in terms that this provision of the code applies to all actions indiscriminately, whether founded upon contract, or upon tort ; that it is immaterial whether the complaint alleges a joint or a joint and several liability ; that the right of recovery is, in this respect, to be regulated by the proof, and not by the allegations of the complaint ; that, in other words, every complaint is, in the respect stated, to be treated as both joint and several where there are two or more defendants ; that the object of the provision obviously is to prevent a plaintiff who proves a good cause of action against part of the defendants, but not against all, from being put to the expense and delay of a new action." In this case each appellant separately moved the court below to render judgment in its favor, which motions were each overruled, and the judgment rendered against both appellants. The Clover . Leaf's motion for a judgment in its favor on the special verdict should have been sustained, and judgment rendered by the court accordingly. The mandate of this court merely directs the court below to render the judgment that should have been rendered in the first instance. The Monon company is in the same situation as if the court below had sustained the motion of the Clover Leaf company, and rendered judgment in its favor, and the Monon company had alone prosecuted this appeal. Besides, it is expressly provided by statute that this court may reverse a case in whole or in part. Sections 660, 661, R. S. 1881 ; sections 672, 673, R. S. 1894.

It has been uniformly held by this court, since the code of civil procedure took effect in 1853, that a case may be reversed as to a part of the appellants, and affirmed as to others, and such has been the uniform practice. *Louisville, etc., R. W. Co.* v. *Duvall, supra; Steeple* v. *Downing,* 60 Ind. 478 (503–504); *Dodge* v. *Dunham,* 41 Ind. 186 ; *State, ex rel.,* v. *Mills,* 82 Ind. 126 ; *Lower* v. *Franks, supra; Citizens' Street R. W. Co.* v. *Robbins, Admr.,* 128 Ind. 449 ; *Haxton* v. *McClaren,* 132 Ind. 235 ; *English* v. *Aldrich,* 132 Ind. 500 ; *Spaulding* v. *Spaulding,* 133 Ind. 122 ; *Eppert* v. *Hall,* 133 Ind. 417 ; *Haskett* v. *Maxey,* 134 Ind. 182 ; *Irey* v. *Mater,* 134 Ind. 238 ; *Clark* v. *Hillis,* 134 Ind. 421 ; *Duckwall* v. *Kisner,* 136 Ind. 99 ; *Offutt* v. *Cooper,* 136 Ind. 701 ; *Small* v. *Kennedy,* 137 Ind. 299 ; *Radican* v. *Buckley,* 138 Ind. 582 ; *Flora* v. *Russell,* 138 Ind. 153 ; *Garr, Scott & Co.* v. *Shaffer,* 139 Ind. 191.

This cause was not reversed upon the evidence as to the Clover Leaf company, as stated in the petition for a rehearing, but upon the special verdict, for the reason that the facts stated in the special verdict entitle the Clover Leaf company to a judgment. It is insisted that the cause should be reversed as to the Monon company, for the further reason "that an invisible and inseparable part of the damages assessed by the jury, was essentially assessed against the Clover Leaf company." No part of the damages assessed by the jury was assessed against either company, but the amount fixed was such as, in the judgment of the jury, would compensate appellee for her injuries. It was left to the court to say, as a matter of law, whether judgment should be rendered for the same against both, or only one of the appellants.

The other questions presented in the petition for a rehearing were fully considered and determined in the original opinion.

The petition is, therefore, denied.

Filed November 6, 1895.