## PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. GRAY.

[No. 3,234.    Filed April 4, 1902.]

CARRIERS.—*Injury to Passenger While Alighting from Train.*—*Complaint.*—In an action by a passenger against a carrier for injuries resulting to plaintiff, a complaint alleging that it was one of the duties of the brakeman to assist passengers in safely alighting from the train, and that in this instance such brakeman advised, commanded, directed, ordered and assisted plaintiff to alight while the train was in motion, and at a time when he must have known it was dangerous, sufficiently shows that the brakeman was at the time acting within the scope of his employment. *pp. 590, 591.*

SAME.—*Termination of Relation of Carrier and Passenger.*—The relation of carrier and passenger is not terminated by the failure of the passenger to leave the train when stopped at the station to which he had paid his fare, and if by reason of the carrier's negligence he attempts to alight after the train starts, and is injured, the carrier is liable. *pp. 591, 592.*

SAME.—*Injury to Passenger While Alighting from Train.*—*Carrier Not Liable.*—A passenger, when his train arrived at the station to which he had paid his fare, started to leave the car, but by reason of his stopping to converse with a friend he did not get off till the train started. The brakeman learning that the passenger desired to alight told him he would have to be quick, and cautioning him to "step with the train," assisted him to the platform; but on account of the motion of the train the passenger fell and was injured. *Held,* that there could be no recovery. *pp. 592-599.*

From Cass Circuit Court; *D. H. Chase,* Judge.

Action by Samuel Gray against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company for damages. From a judgment for plaintiff, defendant appeals. *Reversed.*

*G. E. Ross* and *J. L. Rupe,* for appellant.

*J. C. Nelson, Q. A. Myers, J. P. Gray, J. C. Blacklidge, C. C. Shirley* and *C. Wolf,* for appellee.

WILEY, J.—Appellee was injured while alighting from one of appellant's passenger trains, and prosecuted an action against it for damages. IIis complaint was in three paragraphs. The first paragraph avers that appellee took passage on one of appellant's trains at Logansport, to go to Galveston, and paid the regular fare to said last named station; that when the train stopped at Galveston he arose from his seat and passed out of the car, where he was riding, onto the platform for the purpose of getting off; that when he was about to descend the car steps, appellant's agent in charge of the train negligently caused the same to start suddenly, and that one of the brakemen in charge negligently ordered and directed the plaintiff to leave the train while in motion, and took hold of his arm, led him across the platform and down the steps, and encouraged, advised, directed, and commanded him to get off; that appellee was about seventy years old; that he was somewhat confused by the sudden starting of the train and the conduct of the brakeman, as described; that he relied upon the brakeman's directions and stepped from the train while it was in motion. It is also charged that one of the duties of the brakeman was to look after the safe debarkation of passengers; that appellee knew that the train was moving slightly, but that on account of his age, his imperfect eyesight, and his confusion caused by the sudden starting of the train, and the brakeman's conduct, and being unfamiliar with the movement of trains, and unable to estimate the speed, he believed that the motion of the train was not so great as to make his debarkation dangerous; that the train stopped a very brief time, wholly insufficient in view of appellee's age, to enable him to alight safely; that the brakeman saw him in the act of leaving the train when the same was put in motion and might have stopped it by pulling the bell-cord, before it had acquired any considerable motion, but that he negligently failed and refused to do so, or in any manner signal the engineer to hold the train until appellee could alight; that

when he had descended the steps and was in the act of stepping from the same in obedience to the brakeman's order, and when he advanced too far to retreat, the speed was suddenly very much accelerated, whereby in alighting, and while in the exercise of due care, he was thrown upon the platform and seriously injured. The complaint further avers that said injury was caused without any fault or negligence on his part, but wholly on account of the negligence and fault of appellant. The second and fourth paragraphs of complaint contain all the material averments of the first, differing therefrom only that they do not charge that the train did not stop a sufficient length of time for appellee to debark.

Demurrers to each of these paragraphs of complaint were overruled. The cause was put at issue by an answer in denial, trial by jury, resulting in a general verdict for appellee. With the general verdict the jury found specially by way of answers to interrogatories. Appellant moved for a new trial, for judgment on the answers to interrogatories, and in arrest of judgment. By the assignment of errors, all the rulings of the trial court, to which reference is made, are brought in review.

As against the sufficiency of the complaint it is urged that the facts pleaded do not show that the brakeman was, at the time, acting within the line of his duty and scope of his employment. We do not think this position can be successfully maintained. Summarized, the acts of negligence charged against appellant are that the brakeman advised, commanded, directed, ordered, and assisted appellee to alight while the train was in motion, and at a time when he must have known it was dangerous, and suddenly starting and increasing the speed of the train when appellee was in the act of debarking. In addition to this, in the first paragraph, the further act of negligence is charged that the train did not stop a sufficient length of time for appellee, on account of his age, to alight. It is charged that one of the

duties of the brakeman was to assist passengers in safely alighting from the train. This is an averment of an issuable fact, and it necessarily follows, as a matter of pleading, that when the brakeman was directing, assisting, commanding, and advising appellee to alight, he was acting within the line of his duty and scope of his employment. This conclusion is in harmony with the rule declared in *Wabash R. Co.* v. *Savage*, 110 Ind. 156.

It is also urged that, at the time appellee attempted to alight from the train, the relation of carrier and passenger did not exist between him and appellant, and hence, appellant did not owe to him the duty of a carrier to a passenger. This position is not tenable. Up to the time appellee reached the station where he desired to debark, he certainly was a passenger. He rightfully entered the train, paid his fare, and had done nothing to sever the relation of carrier and passenger. So far as the complaint shows he had made every reasonable effort to alight before the train started. If he had not left his seat in the car, and the train had proceeded on its way, he would still have been a passenger, and by paying his fare to the next station or any station, appellant would have been required to carry him safely. Ordinarily where a person becomes a passenger on a train, pays his fare, and conducts himself in an orderly and proper manner, he remains a passenger until he safely debarks therefrom. In this case, as shown by the complaint, appellant recognized appellee as a passenger, for its servant as shown by the complaint advised, directed, assisted, and commanded him to alight. The relation of carrier and passenger exists, where the passenger, carelessly or inadvertently takes the wrong train, or where a person enters a car to assist a member of his family or some one in his charge. *Evansville, etc., R. Co.* v. *Athon*, 6 Ind. App. 295, 51 Am. St. 303; *New York, etc., R. Co.* v. *Mushrush*, 11 Ind. App. 192; *Cincinnati, etc., R. Co.* v. *Carper*, 112 Ind. 26, 2 Am.

St. 144; *Louisville, etc., R. Co.* v. *Crunk*, 119 Ind. 542, 12 Am. St. 443.

In *Louisville, etc., R. Co.* v. *Costello*, 9 Ind. App. 462, the train stopped three minutes and other passengers got on and off. Costello was a passenger, and the train had stopped a sufficient length of time to enable him to alight, and while he was alighting the train was started and he was injured. It was held that he could not recover, for it was shown that he had sufficient time to alight, and that the company's servant did not know he was attempting to alight when they started the train.

In the case we are now considering, the complaint does not show how long the train stopped at Galveston, but it does show that as soon as it did stop appellee started to alight. Under these facts, he was still a passenger, and appellant owed to him the duties of a passenger.

It is further urged that the complaint is bad because it shows that appellee was guilty of negligence in attempting to alight from the train when it was in motion. It does not necessarily follow because a passenger attempts to alight from a slowly moving train that he is guilty of contributory negligence, for such act is not negligence *per se*. This rule is declared in many cases. *Louisville, etc., R. Co.* v. *Crunk, supra; Cincinnati, etc., R. Co.* v. *Carper, supra; Pennsylvania Co.* v. *Marion*, 123 Ind. 415, 7 L. R. A. 687, 18 Am. St. 330; *Louisville, etc., R. Co.* v. *Bean*, 9 Ind. App. 240. The demurrers to the several paragraphs of complaint were properly overruled.

We proceed next to consider the overruling of appellant's motion for judgment on the answers to interrogatories, *non obstante veredicto*. A correct determination of the question thus raised depends upon the facts specially found. The facts upon which the ruling must be measured are as follows: Appellee was sixty-seven years old; the day he was injured was clear and pleasant; he was in full possession of his sight and hearing; he lived at Galveston and was acquainted with

the trains passing there, and was a frequent traveler thereon; when the train reached Galveston, it stopped to let passengers off and on, and appellee knew that it had so stopped; the train stopped long enough to allow all passengers desiring to do so to get on and off; the train stopped as long as usual; several passengers got on and off the train before it started, without difficulty; the train was started upon a signal from the conductor after all baggage and express matter had been disposed of, and after all passengers, apparently to the conductor and brakeman, had gotten off; when the conductor started the train he did not know that appellee had not alighted therefrom; when the train stopped, appellee arose from his seat and walked to the rear door of the smoking car, where he met a Mr. Tyner, a passenger who came on board at Galveston, and talked with him till the train started, and about the time he came to the door he met the brakeman; at or about the time appellee came to the car door the brakeman asked him if he intended to get off, to which he replied: "Of course," or "certainly;" that the brakeman said, "You will have to be quick about it, step off with the train;" that the appellee passed by the brakeman and stepped off, the latter steadying him with his hand, and appellee fell after he stepped upon the platform; that appellee knew the train was in motion when he came out of the car on the platform; that he fell and received his injury by reason of his stepping on the depot platform while the train was in motion; that there was nothing to impede or hinder appellee from promptly and safely leaving the train while it was standing at the station platform, except his voluntarily stopping to talk to Mr. Tyner; that the reason appellee did not get off the train when it stopped was because he stopped to talk to Mr. Tyner; that if appellee had remained on the train after it started, instead of attempting to get off, he would not have been in any peril.

Interrogatory 20 and answer are as follows: "Was there any other reason for plaintiff getting off the train

after it started to leave the station of Galveston than that he resided there and did not wish to be carried to the next station? Answer. Yes, by request of brakeman." It is also found that the conductor did not give any order to the brakeman to advise appellee, or to order or direct him to leave the train while it was in motion. Interrogatory 23 and answer are as follows: "Did the plaintiff say anything to the defendant's brakeman, or the brakeman to him, except that the brakeman asked plaintiff if he intended to get off there, or if he wanted to get off there, and upon his replying, yes, or certainly, the brakeman replied, 'you will have to be quick about it, step with the train', were these all the words that passed between them? Answer. Yes." By the answer to the 24th interrogatory it is found that all the brakeman did toward the appellee as he attempted to get off was to put his hand upon him as he passed down the steps to steady and assist him to get off safely.

It is quite clear to our minds that the answers to interrogatories, or more correctly speaking, the facts specially found, make a case sharply distinguished from the case made by the complaint. By holding the complaint good against the assault of a demurrer, we necessarily held that the complaint stated facts showing actionable negligence on the part of appellant, and a freedom of contributory negligence on the part of appellee. In the first paragraph, the alleged negligence of appellant consisted in not stopping the train long enough for appellee to leave it in safety; also the conduct of appellant's brakeman in directing, commanding, advising, and assisting appellee to leave the train when it was in motion, and suddenly increasing the speed of the train when he was in the act of leaving. The other two paragraphs charge the same acts of negligence, omitting to charge that the train did not stop long enough to enable him to leave it in safety.

All the evidence and the answers to interrogatories show that it was the purpose of appellee to leave the train at Gal-

veston. He started out of the car with that intention. When he met the brakeman on the platform he told him he was going to ·get off there. The brakeman did not command him to get off, nor advise him that he could get off in safety. He was acting on his own judgment and carrying out his own plans deliberately formed. All that passed between appellee and the brakeman as the former was leaving the train is fairly stated in interrogatory 23 and the answer thereto, which are above set out in full. In brief, this is what occurred between them: The brakeman, when he met appellee, asked him if he was going to get off at Galveston. The latter said yes, or certainly. The brakeman replied that he would have to be quick about it, and that he should step with the train.

We are unable to construe anything that was said by the brakeman to appellee as a command or direction for him to leave the train. From what appellee told the brakeman, and his conduct, the latter was fully informed that the former intended to leave the train at that point. He did not even request the brakeman to stop the train. He was acting upon his own judgment, and was intent in carrying out that judgment. When the brakeman saw that he was determined to leave the train, he merely directed him how to get off in safety. It appears from the answers to interrogatories that appellee was familiar with the trains and a frequent traveler thereon. It is clear that he did not seek any advice from the brakeman, nor was he in any way influenced by what the brakeman said, for he simply did that which he was intending all the time to do. It follows from this and from all that was said and done that the answer of the jury to interrogatory 20, that appellee got off at the request of the brakeman, is a mere conclusion. All that the brakeman said to the appellee can not be construed as a command or order, but as advice or direction as to the best manner of his getting off. The most liberal construction that can be

given to the statement is that he attempted to observe the direction of the brakeman in the manner of his getting off, and not that he got off because he advised or directed him to do so. In this case the appellee's account of what was said and done between him and the brakeman will be found to be in exact harmony with interrogatory 23 and the answer thereto. There is no substantial difference between the appellee and the brakeman, as to what was said between them. In the account given by each of them, there was nothing like a request or command from the brakeman.

So we have had a special finding of the exact facts as disclosed by the evidence, and a statement of a conclusion drawn by the jury in answer to interrogatory 20, which are at variance. That is, the conclusion of the jury is at variance with the facts found. In such case the conclusion must be disregarded, for it is without force or controlling influence. *Geddes* v. *Blackmore*, 132 Ind. 551.

The advice given to appellee by the brakeman, in view of the surrounding facts and circumstances, related wholly to the manner of his getting off the train, and was timely and manifestly right. Appellee was not without fault. Appellant had carried him according to its undertaking to his place of destination, and had given him ample time, as found by the jury, to alight. He did not take advantage of his opportunity to leave the train, but stopped in the car to talk to some one he met. The train stopped as long at the station as it usually did, and all passengers who desired had gotten off and on. The conductor who had charge of the train did not know that appellee had not left the train. Appellee was as fully advised of the movement of the train as the brakeman. The brakeman had no more reason to anticipate that the movement of the train would be suddenly accelerated when the appellee was in the act of getting off than he did, for the brakeman had no control whatever of that matter. It is perfectly clear that appellee did not rely upon the advice of the brakeman, except to the manner of

his getting off, and this advice was good, and was to the effect of diminishing, rather than increasing, the, danger. Under the facts specially found, he was not compelled to the act of jumping off the train while it was in motion, and he, therefore, did it voluntarily. He could have remained on the car and thus avoided injury.

In the case of *Jeffersonville R. Co.* v. *Swift*, 26 Ind. 459, it was held that where a passenger voluntarily leaves a train of cars while in motion, simply to avoid being carried beyond the station where he desires to stop, and he is thereby injured, his own negligence is the proximate cause of the injury, and that he can not recover. In that case the passenger, when contemplating getting off the train at a station, and seeing that the train was not going to stop, remarked to the conductor that he could not take that risk, the conductor responding: "You could if you would," or "you might if you would." The court held that notwithstanding what the conductor said to him, he assumed the risk, and it was such negligence in his making the attempt that he was chargeable with negligence contributing to his own injury. That was a much stronger case against the railroad than this, for there is no pretense here that the brakeman even intimated that appellee could alight in safety. The Swift case is cited and approved in *Cincinnati, etc., R. Co.* v. *Carper*, 112 Ind. 26, at pp. 30, 36; *Woolery* v. *Louisville, etc., R. Co.*, 107 Ind. 381, at p. 387, 57 Am. Rep. 114, and in *Cincinnati, etc., R. Co.* v. *Peters*, 80 Ind. 168, at p. 175.

In *Cincinnati, etc., R. Co.* v. *Carper*, 112 Ind. 26, it is said: "There is an essential difference between a direction in the nature of a requirement and a direction in the nature of advice or information. * * * It is clear to our minds that, upon principle, a railroad company is not responsible for directions in the nature of information or advice, given to a passenger".

In *Vimont* v. *Chicago, etc., R. Co.*, 71 Iowa 58, 32 N. W. 100, 28 Am. & Eng. R. Cases 210, it was held by the su-

preme court of Iowa that where the conductor of a train said to a passenger as the train was leaving the station: "Jump off quick, if you are going to," was not a command to leave the train, but must be considered as "advice, and good advice at that."

In the case of *Lindsey* v. *Chicago, etc., R. Co.*, 64 Iowa 407, 20 N. W. 737, 18 Am. & Eng. R. Cases 175, the words spoken to a passenger "to get off quickly" were construed in the same manner.

In the Swift case, *supra*, referring to the words spoken to the passenger by the conductor, and which elsewhere appear in this opinion, the court said: "He did not tell him to leap, and the words used could scarcely, by a fair construction, be understood as advising him to leap, much less a command to do so."

In this case the movement of the train was the sole cause of danger to appellee. He was a man of mature years and judgment, and was accustomed to traveling on trains. The day was clear, and his eyesight was unimpaired. He was familiar with the surroundings and conditions which confronted him, and it is manifest that the danger was as apparent to him as it was to appellant's brakeman. Notwithstanding the situation with which he was confronted, and the apparent danger that attended his undertaking, he was determined to get off. He simply carried out his intention and determination to leave the train, and all the brakeman did was to advise him the safest and best manner of doing so. Even then he admits that he did not follow the advice of the brakeman to step off with the train, but stepped "squarely off."

It is a rule firmly established, that a passenger is as much bound to use reasonable care to avoid injury as the carrier is to use the greatest degree of skill and care to save the passenger from harm. *Indianapolis, etc., R. Co.* v. *Rutherford*, 29 Ind. 82, 92 Am. Dec. 336.

In Wood on Railways, 1152, it is said: "A passenger

would not under any circumstances be justified in yielding to such advice when the train is moving at a high rate of speed; nor would a person who is lame, or laboring under any serious physical disability resulting from age, disease or other cause, be justified in getting off the train while it is moving at all. In these cases, the passenger must think before he acts, and he is bound to think and act as a person of ordinary prudence would do under the same circumstances." The author cites many authorities to which reference is made.

We are led to the conclusion that the facts specially found show that appellee was guilty of contributory negligence, and hence are in irreconcilable conflict with the general verdict. In such case the general verdict must yield.

Judgment reversed, and the court below is directed to sustain appellant's motion for judgment on the answers to interrogatories.

Comstock, C. J., Black, Henley, and Roby, J. J. concur. Robinson, J., dissents.