GULF, C. & S. F. RY. CO. v. GUESS.

(Court of Civil Appeals of Texas. Austin. Feb. 26, 1913.)

1. CARRIERS (§ 321*)—INJURY TO PERSON ASSISTING PASSENGER — INSTRUCTIONS — REQUESTS NOT COVERED.

The question of negligence of defendant carrier in starting its train before plaintiff, who was assisting his family to seats on the train, had time to leave it, depending on whether the brakeman heard plaintiff's statement to his wife, and therefrom understood his purpose, defendant's requested charge, curing the defect in the charge given, in not making it plain that such statement must not only have been in the presence and hearing of said brakeman, but also must have been heard and understood by him, should have been given.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326–1336, 1343; Dec. Dig. § 321.*]

2. CARRIERS (§ 304*)—DUTY OF BRAKEMAN—LISTENING TO PERSONS BOARDING TRAIN.

It is no part of the duty of a brakeman to listen to conversations between persons about to get on the train; so that he, not having heard such conversation, and understood therefrom that one of them was to assist the other on the train, and then get off, the occurrence of the conversation did not make it the carrier's duty to hold the train for the one wishing to get off.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1104, 1110–1114, 1124, 1242; Dec. Dig. § 304.*]

3. EVIDENCE (§ 151*)—BELIEF—DUE CARE.

One who jumped from a train after it got 35 yards beyond the depot, and while it was going 8 or 10 miles an hour, it having started while he was assisting his family to seats thereon, may not, as regards the question of his contributory negligence, testify that, when he jumped, he thought he could do so in safety.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 440; Dec. Dig. § 151.*]

4. CARRIERS (§ 348*)—PERSONS ACCOMPANYING PASSENGERS—JUMPING FROM MOVING TRAIN — CONTRIBUTORY NEGLIGENCE — INSTRUCTIONS.

The full test of contributory negligence of one who jumped from a train after it had been started while he was assisting his family to seats thereon is not given by an instruction that he could not recover, if he, in jumping off, failed to use ordinary care in so doing, which failure contributed to his injury; he being negligent, however much care he used in jumping, if an ordinarily prudent man would not have jumped at all under the circumstances.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1403–1405; Dec. Dig. § 348.*]

Appeal from District Court, Milam County; J. C. Scott, Judge.

Action by B. L. Guess against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiff. Defendant appeals. Reversed and remanded.

Terry, Cavin & Mills and A. H. Culwell, all of Galveston, for appellant. U. S. Hearrell, of Cameron, for appellee.

### Findings of Fact.

JENKINS, J. Appellee, after having assisted his wife, mother-in-law, and children on the car at Buckholts, jumped from the moving train and was injured. He brought this suit, alleging negligence on the part of appellant in moving said train, without giving him reasonable time to get off the same. Buckholts is a small station at which appellant's passenger trains stop only long enough for passengers to get on and off. The injury occurred on December 22d; and, on account of Christmas travel, more than the usual number of passengers got on and off of the train at that date. The train was due at 2:24 p. m., but was about an hour late. While waiting for the passengers to disembark, appellee was standing near the brakeman, and told his wife, who was standing some feet away, to stand close to him, so that she could be the first to get on when the passengers were out, and give him an opportunity to get out before the train started. Appellee had his infant child in his arms, and assisted his family on the car. They found the seats all taken, and, when about the middle of the car, it started, and appellee gave his child to his wife, and turned to go out the front way, but the aisle was filled with people who were standing, and, thinking that he could not pass them hurriedly, he turned and went to the back end of the car. There was one passenger coach in the rear of the one which he had entered, and he found the vestibule between these cars closed. He went on to the rear and jumped from the steps of the rear car and was injured. The place where he jumped off was some 35 yards from the depot, and the train was going 8 or 10 miles an hour. He recovered judgment for the sum of $1,200.

### Opinion.

[1] As to whether appellant was negligent in starting its train when it did depends upon whether or not the brakeman heard the statement that appellee made to his wife, and understood from said statement that appellee intended to get off the train after assisting his family to find seats thereon. Appellee was near enough to the brakeman at the time he made such statement for the brakeman to have heard him, if he had been listening, and his statement, if understood by the brakeman, would have conveyed to him the information that appellee intended to get off the train. The evidence shows that the brakeman was busy at the time assisting passengers to alight; and he testified that he did not hear said conversation, and did not know that appellee or any one else entering the train intended to get off the same. Upon this issue the court charged the jury

---

as follows: "If you believe from the evidence that the brakeman of the defendant's train at Buckholts, Tex., took his position at or near the steps of defendant's coach for the purpose of assisting passengers off and on said train, and that the plaintiff and his wife had a conversation with each other in the presence and hearing of said brakeman as to the plaintiff's intention to assist his wife and family in boarding said train, and, after so assisting them, to leave the said train, and you further believe that such conversation, if such there was, was of such nature and character as to there and then bring knowledge to said defendant's brakeman of plaintiff's such intention, if he had such, and that the plaintiff, in pursuance of such intention, went upon the defendant's train to assist his said wife and family thereon, then it was the duty of the defendant to stop its train a reasonably sufficient time to allow the plaintiff to go upon and assist his wife and family upon said train, and then to alight therefrom in safety; and if you further believe from the evidence that the defendant did not so stop its said train a reasonably sufficient time as above charged, but caused said train to be put in motion before the plaintiff could disembark, and that the plaintiff in attempting to disembark from said train jumped or stepped out in the direction the train was going, and was injured thereby, then you will find for the plaintiff, unless you find against the plaintiff on the ground that he was guilty of contributory negligence under a subsequent paragraph of this charge and under other charges." The appellant requested the following special charge: "You are charged that although you believe plaintiff and his wife had a conversation just before getting on the train in reference to plaintiff getting on the train to assist his family, and would get off, and that such conversation was in the presence of the brakeman, yet if you do not further believe from a preponderance of the evidence that said brakeman heard such conversation, or unless you find that said brakeman knew that it was not the purpose of plaintiff to become a passenger, your verdict should be for the railway company." This charge was refused. The charge given by the court does not make it plain that such conversation must not only have been in the presence and hearing of said brakeman in the sense that he was close enough to have heard it, but, also, that the brakeman must have heard and understood such conversation. The requested charge would have cured this defect in the charge given, and it was error to refuse the same.

[2] It was no part of the duty of the brakeman to listen to and understand conversations between parties about to get on the train; and, if he did not in fact hear and understand what appellee said to his wife, the fact that appellee made such statement did not render it incumbent upon appellant to hold its train for appellee to get off. The evidence shows that none of the other members of the train crew knew of appellee's intention in this regard; nor did any of said crew know of appellee's intention to jump off the moving train, nor that he had done so until they reached the next station.

[3] 2. Appellant assigns error upon the court permitting appellee to testify that at the time he jumped off the train he thought he could do so in safety. In Railway Co. v. Miller, 8 Tex. Civ. App. 241, 27 S. W. 905 (opinion by the Court of Civil Appeals for the Fifth District), it was held error to permit such testimony. We quote from said opinion as follows: "Appellee was permitted to testify, over objection, that he did not consider it unsafe to get off the train at the time and place he alighted. Appellee's opinion on this point was not competent evidence. What he thought of the dangers of the undertaking was not in issue; the question for determination was, Would an ordinarily prudent person have jumped off as he did under like conditions?" On the other hand, it was held in Railway Co. v. Satterwhite, 19 Tex. Civ. App. 170, 47 S. W. 42 (opinion by the Court of Civil Appeals of the First District), that it was not error to permit a witness to answer such a question; and in support of this ruling the court cites Bridge Co. v. Cartrett, 75 Tex. 628, 13 S. W. 8. We do not think the latter case is authority for permitting the appellee to testify in this case that he thought it was safe for him to jump off the train. In the Bridge Company Case the defendant contended that plaintiff was negligent in not jumping off his wagon, which fell from the bridge. The defendant, as excusing himself for not doing so, testified that he thought the railing of the bridge was like other railings on bridges, strong enough to stop his wagon. In the absence of testimony showing that he knew of the rotten condition of the railing, his opinion that the same was sound justified him in acting in the emergency as he did. But this to our mind presents a different issue from that of allowing a man who voluntarily jumps from a moving train to justify his acts by saying that he thought he could do so safely. The peculiar facts of the Satterwhite Case, supra, may have rendered such a question admissible, as in that case plaintiff was told by a servant of the railway company that he had better get off the train. The train was moving slowly, and, if he did not know or believe that it was dangerous for him to get off, he was perhaps justified in acting upon the advice of the servant who told him to get off; and a reasonably prudent man may have been justified in such belief, based upon the advice of the railway company's servant. Under the facts of this case, we think it was error to allow said question to be answered over objections of appellant.

[4] 3. Appellant assigns error upon the fol-

lowing charge of the court: "If you believe that the plaintiff went upon said train with his said wife and family to assist them in going upon said train, with the knowledge of the defendant's brakeman, but you further believe that the plaintiff in jumping or stepping off said train failed to use ordinary care in so doing, and that such failure, if failure there was, to use such ordinary care, caused or contributed to cause his injuries, if any he received, then you will find for the defendant, although you may believe that the defendant was guilty of negligence as alleged by the plaintiff, and submitted to you in a former paragraph of this charge." The criticism as to this charge is that it does not instruct the jury that appellee would be guilty of contributory negligence if a reasonably prudent man would not have jumped off the train under the circumstances that he did, but only that appellee was required to use ordinary care in jumping off the train. It matters not how much care he used in jumping from the train, if it was negligence in him to jump at all under the circumstances; and we think the charge is subject to the criticism made by appellant in this regard, especially as nowhere in the charge does the court instruct the jury that the test was whether or not an ordinarily prudent man would have jumped off the train under the circumstances under which appellant did so. Railway v. Highnote, 99 Tex. 23, 86 S. W. 923; Railway v. Leslie, 57 Tex. 83; Railway v. Wallace, 139 S. W. 1052.

For the errors above indicated, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.